UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LION PETROLEUM OF MISSOURI, INC., ) | |
| ) | |
| Plaintiff/Counterclaim Defendant, ) | |
| ) | |
| vs. ) | Case No. 4:06CV0698 AGF |
| ) | |
| MILLENNIUM SUPER STOP, LLC; ) | |
| RAY PERRIN; SYLVESTER HOLMES; and ) | |
| MILLENNIUM SUPER STOP II, LLC, ) | |
| ) | |
| Defendants/Counterclaim Plaintiffs, ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on three pre-trial motions filed by Plaintiff, which taken together seek dismissal and/or summary judgment of several counts of Defendants' Counterclaim. A hearing on the motions was held on July 29, 2008. For the reasons set forth below, Plaintiff shall be granted summary judgment on these counts.

## BACKGROUND

Plaintiff Lion Petroleum of Missouri, Inc., is a distributor of motor fuels. Defendants are Ray Perrin and Sylvester Holmes, two individual owners/operators of two service stations selling fuel to the public in the Kansas City, Missouri, area; and Millennium Super Stop, LLC ("Millenium"), and Millennium Super Stop II, LLC ("Millennium II"), the two service stations in question. Prior to July 2005, Millenium

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

obtained its fuel from Carter Energy Corp. ("Carter"). Due to supply and other problems, Millenium ended its relationship with Carter in July 2005, and Plaintiff, which possessed a sublicense from ConocoPhillips Co. ("ConocoPhillips") to market and use ConocoPhillips registered trademarks, began to supply fuel to Millenium. In late September or early October 2005, the parties entered into a written ten-year fuel supply contract, effective July 24, 2005.[2] Pursuant to the contract, Plaintiff agreed to sell and deliver to Defendants,[3] and Defendants agreed to purchase, specified quantities of trademark-branded fuel products for Defendants to resell to the public at the service stations using Plaintiff's "identifications," which included the ConocoPhillips trademarks, brand names, and trade dress or color schemes. Pricing for the fuel was based upon pricing information in effect on the date of delivery. The amounts of fuel to be sold and purchased each month were set forth in a schedule attached to the contract. The contract prohibited Defendants from using Plaintiff's identifications in connection with any fuels other than those from Plaintiff, and provided that if the contract terminated for any reason, Defendants would immediately discontinue use of these identifications. (Doc. #121-5.)

---

[2] It is undisputed that the contract was actually signed some time in late September or early October 2005.

[3] As discussed below, Millenium II was not created until later in October 2005, but as it is undisputed that Plaintiff then supplied Millenium II with fuel under the terms of the fuel supply contract in question, the Court uses the term Defendants collectively, unless otherwise noted.

The contract contained the following "merger" clause:

> ENTIRETY - RELEASE - EXECUTION. This Contract, as of the effective date hereof, comprises the entire agreement, and merges and supersedes all prior agreements, understandings, representations and warranties (oral or written, expressed or implied) between Seller and Buyer concerning the subject matter of this Contract, including, without limitation, the Products. All such prior agreements between Seller and Buyer and the franchise or other relationships arising thereunder are hereby terminated as of the effective date hereof; and Seller and Buyer hereby respectively release and forever discharge each other, as of the date of each party's execution hereof and to the extent permitted by law, from any and all claims, obligations and demands which each now has against the other (whether or not now known to either), arising directly or indirectly out of or in connection with any such prior agreement and relationship specified above or any sales or deliveries of any Products by Seller to Buyer thereunder or otherwise, excepting, however, claims of Seller against Buyer for indebtedness, reimbursement or indemnification, or related to equipment.

Id. ¶ 20.

The contract was signed on behalf of Plaintiff by its vice president, Imran Lodhi, and by the individual Defendants on behalf of Millenium and as guarantors. The typed version of the schedule of quantities of fuel to be sold and purchased provided that Defendants would receive $.0175/gallon as a rebate for 84 months. The "$.0175" was crossed out by hand and the handwritten figure of "$0.0200" was written in its place. Later in October 2005, Millennium II opened and also obtained fuel from Plaintiff. Defendants allege that a contract was presented but never executed and that Plaintiff agreed to supply fuel to Millenium II under the same terms it had been supplying Millenium.

In its amended complaint, Plaintiff alleges that eight months after Plaintiff

3

commenced supplying fuel, Defendants defaulted on payments for fuel that had been supplied by Plaintiff, in the amount of approximately $200,000. Plaintiff further alleges that another distributor then sold unbranded fuel to Defendants, which Defendants resold at the two service stations using the ConocoPhillips trademarks and trade dress. It is undisputed that in mid-April 2006, after Defendants stopped making payment to Plaintiff, Plaintiff made an offer to purchase the two service stations, which was not accepted. Plaintiff asserts federal and state unfair competition claims, and state claims of breach of contract, "detrimental reliance," breach of implied covenant of good faith and fair dealing, "suit on account," and unjust enrichment.

Defendants have filed counterclaims asserting violation of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801-2841 (Count I); and state claims of breach of contract (Count II), breach of the implied covenant of good faith and fair dealing (Count III), fraud in the inducement (Count IV), fraudulent misrepresentation (Count V), negligent misrepresentation (Count VI), and prima facie tort (Count VII). Defendants allege that Plaintiff, acting through its agent, Lodhi, induced Defendants to enter into the supply contract by claiming that Plaintiff could supply fuel at a cheaper price than Defendants' then-current supplier, and promising to be more responsive to any issues that might arise. Defendants allege that as further inducement, Lodhi promised a $0.02 per-gallon rebate on unleaded gasoline, a 2% credit on invoices paid within nine days of delivery, and that Plaintiff would send Defendants a daily price sheet showing the cost of fuel, including taxes and freight, and the expected price of fuel for the following

4

day. In each of Counts IV through VII, Defendants seek damages (unspecified), punitive damages, fees, and costs.

Defendants assert that they signed the contract even though there were several errors/omissions in it and that at the time, Plaintiff promised that the contract would be amended and/or a new contract executed to correct these errors, but Plaintiff never did so. Defendants allege that all the above representations by Lohdi were false and "aimed at attempting to trap [Defendants] in a fuel supply contract without thereafter delivering the promised cost savings, all in an attempt to damage [Defendants'] business so that [they] would be forced to sell [their] service stations to Plaintiff at below market cost." They assert that the representations were material to their decision to enter into the contract, and that they relied upon them in deciding to enter into the contract. Defendants assert that after the contract was executed, Plaintiff did not always provide invoices and daily price sheets as promised, which made it difficult for Defendants to account for and verify their purchases.

Plaintiff now moves by separate motions to dismiss and/or for summary judgment on all of Defendants' counterclaims except the claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Plaintiff argues that the alleged representation about the 2% credit cannot be actionable fraud because this term was not included in the written contract and thus Defendants could not reasonably have relied on the alleged prior oral statement. Plaintiff argues that fraud cannot be shown with respect to the other alleged misstatements (Plaintiff would supply fuel at a

cheaper price, be more responsive, provide daily price sheets, give a $0.02 per-gallon rebate) because Defendants' evidence shows that the statements were in fact true; because the statements were subjective opinions about future events; and because Defendants are unable to prove that the statements, when and if made by Plaintiff, were knowingly false when made, and/or that Defendants relied on the alleged false representations. Plaintiffs argue that Defendants are improperly attempting to convert what is essentially a breach of contract claim into a tort claim.

In support of its motions, Plaintiff cites to evidence in the record, including Lohdi's affidavit in which he attests that Plaintiff sent Defendants daily price sheets, and that neither he nor any other agent of Plaintiff ever discussed with, or agreed to provide, Defendants a 2% credit on any purchases of fuel.

## DISCUSSION

### Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." To be a genuine issue of fact, the evidence must be such "'that a reasonable jury could return a verdict for the nonmoving party.'" Depositors Ins. Co. v. Wal-Mart Stores, Inc., 506 F.3d 1092, 1094 (8th Cir. 2007) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). To be a material fact, the factual issue must potentially "'affect the outcome of the suit under the

governing law.'" Id. "'Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "'Mere allegations not supported with specific facts are insufficient to establish a material issue of fact and will not withstand a summary judgment motion.'" Id. at 1095 n.3 (quoting Henthorn v. Capitol Commc'n, Inc., 359 F.3d 1021, 1026 (8th Cir. 2004)). When considering a motion for summary judgment, a court must view the evidence and the inferences that may be reasonably drawn therefrom in the light most favorable to the non-moving party. Davis v. Walt Disney Co., 430 F.3d 901, 903 (8th Cir. 2005). The burden of demonstrating that there are no genuine issues of material fact rests on the moving party. Celotex Corp., 477 U.S. at 323.

**Petroleum Marketing Practices Act**

Defendants claim that Plaintiff violated the PMPA by terminating fuel deliveries and its "franchise" with Defendants without providing 90 days notice or notice by certified mail, as required under the PMPA. Plaintiff argues that Defendants cannot invoke the PMPA because there was no franchise relationship between Plaintiff and Defendants, as that term is defined by the PMPA, in that there was no lease involved. The Court agrees. The PMPA governs the termination or nonrenewal of franchise relationships between petroleum product distributors and the retailers who sell these

products to the public. Cont'l Enters., Inc. v. Am. Oil Co., 808 F.2d 24, 26 (8th Cir. 1986). The purpose of the PMPA is to protect franchisees from arbitrary or discriminatory terminations and nonrenewals of their franchises. Id. The PMPA provides guidelines as to proper grounds and notice for a franchisor to follow when terminating or non-renewing a franchise. If a franchisor does not comply with statutory termination or non-renewal procedures, the franchisee may bring a civil action under 15 U.S.C. § 2805(a) and/or § 2805(b). In order to state a claim under the PMPA, the plaintiff bears the burden of proving "the termination of the franchise or the nonrenewal of the franchise relationship." 15 U.S.C. § 2805(c).

The PMPA defines "franchise" as follows: "The term 'franchise' includes . . . any contract under which a retailer or distributor . . . is authorized or permitted to occupy leased marketing premises, which premises are to be employed in connection with the sale . . . of motor fuel under a [refiner's] trademark . . . ." 15 U.S.C. § 2801(1)(B)(i). Defendants appear to be arguing that this language does not constitute an exhastive list of all franchise agreements because the definition uses the term "includes." Case law, however, does not support this argument. See, e.g., Dersch Energies, Inc. v. Shell Oil Co., 314 F.3d 846, 860 (7th Cir. 2002) (stating that a franchise under the PMPA covers the essential contracts between a franchisor and a franchisee, i.e., a contract to use the supplier's trademark in connection with retail sales, a contract for supply of fuel to be sold under the trademark, and a lease of premises for the sale of fuel); see also Thelen Oil Co. v. Fina Oil & Chem. Co., 962 F.2d 821, 823 (8th Cir. 1992) (stating, "The lease falls

8

squarely within the scope of the PMPA . . . .").

Here it is undisputed that there was no lease between the parties.[4] The cases cited by Defendants do not support their position. Hanes v. Mid-America Petroleum, Inc., 577 F. Supp. 637 (W.D. Mo. 1983), did not discuss whether a lease was required under the PMPA because the court found that a lease existed. And April Marketing & Distributing Corp., v. Diamond Shamrock Refining & Marketing Co., 103 F.3d 28 (5th Cir. 1997), specifically states that "[w]ithin the meaning of the PMPA, a 'franchise' consists of three core components: a contract to use the refiner's trademark, a contract for the supply of motor fuel to be sold under the trademark, and a lease of the premises at which the motor fuel is sold." 103 F.3d at 30 n.3. At oral argument, Defendants' counsel acknowledged that they could cite no case which stated, or from which it could be inferred, that a lease is not required under the PMPA. Nor has this Court found any such case. Accordingly, summary judgment shall be granted in Plaintiff's favor on Defendants' counterclaim under the PMPA.

**Misrepresentation Counterclaims (Fraud in the Inducement, Fraudulent Misrepresentation, and Negligent Misrepresentation)**

It is undisputed that Missouri law governs Defendants' state law counterclaims. In ruling on the motion for summary judgment on these claims, this Court must predict how Missouri's highest court would decide the issues. See, e.g., Lenhardt v. Basic Inst.

---

[4] It is also undisputed that nothing prevented Defendants, both before and after its agreement with Plaintiff, from purchasing fuel from another supplier.

of Tech., Inc., 55 F.3d 377, 379-80 (8th Cir. 1995).

Under Missouri law,

> [t]he elements of fraudulent misrepresentation are: (1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the representation; (5) the hearer's reliance on its truth; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately caused injury.

Harris v. Smith, 250 S.W.3d 804, 808 (Mo. Ct. App. 2008) (citation omitted). Fraud in the inducement is a subset of fraudulent misrepresentation, applicable where a fraudulent misrepresentation leads another to enter into a transaction with a false impression of the risks, duties, or obligations involved. Utica Mut. Ins. Co. v. BancInsure, Inc., No. 06CV0664 ERW, 2007 WL 2860237, at *18 n.9 (E.D. Mo. Sept. 25, 2007); Hess v. Chase Manhattan Bank, USA, N.A., 220 S.W.3d 758, 763 (Mo. 2007) (en banc); Bracht v. Grushewsky, 448 F. Supp. 2d 1103, 1110 (E.D. Mo. 2006).

The parol evidence rule prohibits evidence of prior or contemporaneous agreements that vary or contradict the terms of an unambiguous and complete contract absent fraud, common mistake, accident, or erroneous omission. Celtic Corp. v. Tinnea, 254 S.W.3d 137, 142 (Mo. Ct. App. 2008) (per curiam). Parol evidence may not be used to create ambiguity in an otherwise unambiguous contract. Id. Thus, fraud can be proved by parol evidence, but "in the absence of fraud . . . a valid written contract merges all prior and contemporaneous negotiations on the subject." Comp & Soft, Inc., v. AT&T Corp., 252 S.W.3d 189, 196-97 (Mo. Ct. App. 2008).

> Under Missouri law, the elements of negligent misrepresentation are:
>
> (1) speaker supplied information in the course of his business or because of some other pecuniary interest; (2) due to speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) speaker intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) listener justifiably relied on the information; and (5) that as a result of listener's reliance on the statement, he/she suffered a pecuniary loss.

Harris, 250 S.W.3d at 808 (citation omitted). A party's failure to prove any one of the elements of either misrepresentation claim is fatal to that claim. Id. (citation omitted).

Defendants contend that the false representations on which they rely were made by Lohdi in July 2005, at the start of the parties' relationship. Assuming that Plaintiff actually made all the representations asserted by Defendants, as this Court must do in considering Plaintiff's request for summary judgment, the Court concludes that Missouri courts would hold that these statements were not of a nature to give rise to an action for misrepresentation.

Lodhi's alleged statements that Plaintiff could supply fuel at a cheaper price than Defendants' then-current supplier and alleged promise to be more responsive to any issues that might arise were statements that courts consider "puffing" as opposed to fraud. See, e.g., Midwest Printing, Inc. v. AM Int'l, Inc., 108 F.3d 168, 171 (8th Cir. 1997) (holding that representations that compare the efficiency, economy, or quality of one product to other products may not form the basis of a cause of action in fraud). Moreover, Defendants had an opportunity to evaluate Plaintiff's "responsiveness" prior to

signing the contract in September or October 2005.

With regard to the remaining representations, the Court notes that Perrin admitted in his deposition that there were no problems with Plaintiff's performance prior to December 2005. Plaintiff's failure to adhere to these representations some five months after they were made does not suffice to prove an intent to defraud when the statements were made. "A mere failure of performance does not establish knowledge or intent of the speaker to defraud . . . ." Bank of Kirksville v. Small, 742 S.W.2d 127, 132 (Mo. 1998) (en banc). The Court thus concludes that Defendants have failed to make a showing sufficient to establish the existence of Plaintiff's intent to defraud with respect to Lohdi's alleged statement that he would always provide daily invoices, promise to execute a new corrected written contract, and promised of a 2% credit.

At the hearing, counsel for Defendant posited that circumstantial evidence establishes Plaintiff's intent to defraud. According to counsel, this intent can be inferred from Plaintiff's conduct of making promises which Plaintiff did not intend to keep, so that Defendants would enter into an exclusive fuel contract with Plaintiffs, whereupon Plaintiffs would overcharge Defendants, forcing Defendants into a poor financial situation, which Plaintiffs could use as leverage in an attempt to purchase Defendants' service stations at below-market prices. While it is true that fraud can be established by circumstantial evidence, id., the Court believes that Defendants' reasoning is too attenuated to establish intent here. See id. (rejecting buyer's claim of fraud in the inducement to enter into written sales contract, where claim was based upon alleged oral

12

promises that the seller would give buyer a setoff on the purchase price, and that seller would draft and execute a new contract incorporating this term). As a factual matter, Defendants offer nothing more than their own unsupported supposition of Plaintiff's alleged knowledge or fraudulent intent. This will not suffice on this record to defeat summary judgment.

In addition, with regard to the alleged promise of a 2% credit for invoices paid within nine days, Defendants cannot show reliance on the alleged oral statement. A party cannot allege reliance on promises made in the course of negotiations, whether written or oral, true or false, if the party subsequently enters into a written agreement silent on the matter. Toghiyany v. AmeriGas Propane, Inc., 309 F.3d 1088, 1092 (8th Cir. 2002) (upholding summary judgment for defendant where plaintiff alleged that it entered into a contract in reliance on the promise that a five-year commitment would govern the relationship, because no such provision was found in the subsequent written document) (citing Cook v. Little Caesar Enters., Inc., 210 F.3d 653, 658 (6th Cir. 2000)). If a 2% credit were material to Defendants decision to enter into the written agreement, one would have expected Defendants to have made sure that this term was included in the written agreement. The parties did, in fact, make other hand-written changes to the contract related to price. Reliance being an element of fraud, Defendants cannot show that fraud occurred regarding the 2% credit. Thus, the exception to the parol evidence rule in cases of fraud is inapplicable.

The cases relied upon by Defendants are unavailing. George F. Robertson Plastering Co. v. Magidson, 271 S.W.2d 538 (Mo. 1954), stands for the proposition that the parole evidence rule does not forbid parole evidence of an agreement entered into subsequent to when a written agreement was executed, to alter the written contract. And while Employers' Indemnity Corp., v. Garrett, 38 S.W.2d 1049 (Mo. 1931), does state the general proposition noted above that mistake, fraud, surprise, and accident furnish exceptions to the parole evidence rule, the case is otherwise inapposite. Garrett provides that where mutual mistake as to a term of a written contract is alleged, the parol evidence offered in support must be clear and convincing. This is not the situation here.

Nor can the statements at issue form the basis for a claim of negligent misrepresentation. See Comp & Soft, Inc., 252 S.W.3d at 197-98 (holding on summary judgment that alleged statements by defendant provider that it would supply cost breakdowns and would not hire away plaintiff's consultants did not give rise to cause of action against provider for negligent misrepresentation, as statements involved future intent or failure to accurately predict future consequences, and record did not support plaintiff's allegations or justify its reliance on the alleged statements).

**Prima Facie Tort**

Count VII of Defendants' Counterclaim alleges that Plaintiff committed a prima facie tort by engaging in the same course of conduct which Defendants allege shows Plaintiff's intent to defraud. Under Missouri law, "[t]he essential elements of a prima facie tort are: an intentional lawful act by the defendant; defendant's intent to cause

injury to the plaintiff; injury to the plaintiff; and an absence of any justification or an insufficient justification for the defendant's act." Hertz Corp. v. Raks Hospitality, Inc., 196 S.W.3d 536, 549 (Mo. Ct. App. 2006).

> Missouri courts, while recognizing prima facie torts at least nominally, do not look upon them with favor and have consistently limited the application of the prima facie tort. . . . The doctrine of prima facie tort cannot be utilized to avoid an inability to prove one element of a nominate tort that is otherwise applicable under the facts. There must also be an actual intent to injure, not merely an intent to do the act which may result in the claimed injury.

Id. (citation omitted). "To prove actual intent, plaintiff must show actual malice." Cridlebaugh v. Putnam County State Bank of Milan, 192 S.W.3d 540, 545 (Mo. Ct. App. 2006). "A valid business interest will generally provide sufficient justification to defeat a claim for prima facie tort." LLP Mortg., Ltd. v. Marcin, Inc., 224 S.W.3d 50, 55 (Mo. Ct. App. 2007).

Accepting as true all of Defendants allegations, and viewing the facts in the light most favorable to Defendants, the Court does not believe that Missouri courts would recognize a claim for prima facie tort in favor of Defendants here. As with the counterclaims sounding in fraud, Defendants have provided no evidence to establish Plaintiff's requisite intent. To attempt to improve one's own business interest, even if that causes harm to others, is justifiable business practice, and does not show malicious intent. See Rigby Corp. v. Boatmen's Bank & Trust Co., 713 S.W.2d 517, 544-45 (Mo. Ct. App. 1986) (granting summary judgment on fraud and prima facie tort claims where bank exercised its rights under terms of the note sued upon, causing harm to debtor);

15

Centerre Bank of Kansas City, N.A. v. Distributors, Inc., 705 S.W.2d 42, 55 (Mo. Ct. App. 1985) (reversing judgment awarding damages on theory of prima facie tort where bank knew that calling loan due would cause debtor to go out of business). The Court notes that here an argument of undue influence would not apply. Defendants' resort is to breach of contract and/or breach of covenant remedies, and not to prima facie tort.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to strike certain arguments and an affidavit submitted by Plaintiff is **DENIED**. [Doc. #127]

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment is **GRANTED** as to all Defendants' counterclaims except the claims for breach of contract and breach of the implied covenant of good faith and fair dealing. [Doc. #116]

**IT IS FURTHER ORDERED** that Plaintiff's motions to dismiss are **DENIED** as moot. [Doc. #101 & Doc. #117]

*[signature]*
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of August, 2008